Vincent B. Lynch, *pro hac vice*
vlynch@floridalawyer.com
Lynch & Robbins, P.A.
2639 Dr. MLK Jr. Street
St. Petersburg, FL 33704
727-822-8696
727-471-0616
*Attorneys for Plaintiff*

Michael E. Ramsden, ISB #2368
firm@ramsdenlyons.com\
Ramden & Lyons, LLP
700 Northwest Blvd.
P.O. Box 1336
Coeur d'Alene, ID 83816
208-664-5818
208-664-5884
*Local Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| METH LAB CLEANUP, LLC, a domestic limited liability corporation, | CASE NO.: 2:10-cv-00193-N-EJL |
| Plaintiff, | Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue |
| vs. | |
| SPAULDING DECON, LLC, a foreign limited liability corporation and LAURA SPAULDING, individually, | |
| Defendants. _____/ | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; OR IN THE ALTERNATIVE TO TRANSFER FOR IMPROPER VENUE OR IN THE ALTERNATIVE TRANSFER FOR CONVENIENCE (28 USC § 1404(a))**

COMES NOW PLAINTIFF, METH LAB CLEANUP, LLC, by and through its undersigned counsel, and submits their Memorandum of Law in Opposition to Defendants' Motion to Dismiss or in the alternative, to transfer.

## I. THE SIGNIFICANT FACTS SUPPORTING PERSONAL JURISDICTION

December of 2006, Defendant, Laura Spalding, individually and on behalf of Defendant, Spaulding Decon, LLC, contacted Plaintiff in Idaho to sign up for and pay for Plaintiff's training and certification. Defendants logged onto the Plaintiff's web site (www.methlabcleanup.com), filled out a form to indicate interest in receiving the Plaintiff's specialized training and certification, and paid the registration fee of approximately $1,100.00. See Deposition of Laura Spaulding at pp. 48-51, a true and correct copy of such deposition was filed with the Court pursuant to Plaintiff's Notice of Filing dated September 20, 2010.

Defendants began providing Nationwide services based upon the training and certification received from Plaintiff. In December of 2007, Defendants contracted with Plaintiff, to act as a subcontractor through Defendants' headquarters in Idaho. Defendants delivered estimates and invoices for such services to Defendants in Idaho. See Defendants Invoice Numbers 1159 and 1160 billed and mailed to Meth Lab Cleanup in Post Falls, Idaho, attached hereto as Exhibits "A" and "B," respectively. Defendants had numerous conversations (between 20 and 40) with Plaintiff, through Plaintiff's principals Julie and Joe Mazucca, in Idaho regarding the training course to provide services for Plaintiff on possible jobs and regarding the disputes between the parties.. See Deposition of Laura Spaulding at pp. 61-62.

Unfortunately, Defendants began an intentional campaign of attacking and competing with Plaintiff improperly by among other things registering and using the domain name www.meth-labcleanup.com. This forced Plaintiff to bring an action with the National Arbitration Forum to

resolve the domain name violation by Defendants. See National Arbitration Forum Decision attached hereto as Exhibit "C." Defendants also copied and used copyrighted material and other proprietary information directly from Plaintiff's web site (See Deposition of Laura Spaulding at p. 58); misappropriated the Plaintiff's trade names and trade dress, and intentionally violated Plaintiff's trademarks and domain name right. In competing illegally with Plaintiff, Defendants have and continue to advertize on their website that they provide 24 hour and nationwide service and "uses contractors in every state in the continental U.S." See Excerpt from www.spauldingdecon.com, attached hereto as Exhibit "D'. Thus, Defendants admit that they use contractors in the State of Idaho in direct competition with Plaintiff. As part of their attacks intentionally directed towards Plaintiff in Idaho, Defendants filed a Petition for Cancellation of Plaintiff's trademark "Meth Lab Cleanup LLC." See Petition for Cancellation attached hereto as Exhibit "E."  This trademark is alleged to have been violated by Defendants in this action. Defendants caused the Petition for Cancellation to be served upon Plaintiff in Post Falls Idaho. See Petition for Cancellation, Exhibit "E" at p. 2. In the Petition for Cancellation, Defendants claim that Plaintiff obtained its trademark fraudulently and state that Defendants "advertised extensively and continuously its meth lab cleanup services and created extensive goodwill in its services." Id. at p. 3. The Patent and Trademark Office granted Plaintiff's Motion to Stay the PTO proceeding pending the resolution of the instant action.

      Defendants filed with the National Arbitration Forum and served upon Plaintiff in Post Falls, Idaho, their Response in Accordance with the Rules for Uniform Domain Name Dispute Resolution Policy, a copy of which is attached hereto as Exhibit "F."  In this Response, Defendants falsely stated that Plaintiff's claims were "contrived, reckless, and totally without merit…." See Exhibit "F", at p. 1. In their Response to the National Arbitration Forum,

Defendants stated that: (1) the "parties are business competitors for work nationwide;" (2) Defendants contracted with Plaintiff for training and certification; and (3) Defendants had a "license" to use of Plaintiff's website material. Id. at p. 4.

The National Arbitration Forum Panel held that Plaintiff had no right to use Plaintiff's marks or other proprietary information and that Defendants' conduct in violation of Plaintiff's intellectual property rights was taken in bad faith. See National Arbitration Forum Decision attached hereto as Exhibit "C."

The Plaintiff asked Defendants to cease use of their intellectual property clearly identifying the copyrighted material being used by Defendants. On September 29, 2009, Defendants responded via email to Plaintiff in Idaho. See Email from Defendants to Plaintiff attached hereto as Exhibit "G." Defendants sued Plaintiff in Florida and caused service of process to be effectuated on Plaintiff in Post Falls, Idaho.

Defendants heavily market their services on a "nationwide," "24-hours-per-day" basis to the general public on the internet and otherwise. Defendants' website is aggressive and engages the public in numerous ways. Customers can submit an assignment online for the services provided by Defendants. See "Submit an Assignment" at www.spaudlingdecon.com, attached hereto as Exhibit "H." Customers can make payments on Defendants' website. See "Payment Form" at www.spaudlingdecon.com, attached hereto as Exhibit "I." Customers can register on Defendants' site for an account and newsletter. See "Account Registration" at www.spaudlingdecon.com, attached hereto as Exhibit "J."

The following is some of the copyrighted material taken by Defendants directly from Plaintiff's website:

- Our testing, assessment and decontamination projects and following reports are complete scientifically sound and legally defensible and meet customer and regulatory objectives.

- . . offers affordable effective decontamination services using the most advanced technologies.

    Services include:

- Physical on-site inspections
- Law enforcement records research identifying the removal of gross contaminates
- Development of the sampling strategy
- Quality controlled sample collection
- Sample analysis by a certified laboratory
- Legally defensible closure report
- Complete process documentation
- Work plan implementation with approval of environmental health agencies
- Decontamination of residue to levels below established cleanup standards
- Decontamination program is structured to meet specific regulatory agency requirements
- Post decontamination verification sampling

Defendant, Laura Spaulding, testified in her deposition that:

- Defendants sent a communication via email or website link to Plaintiff about the Plaintiff's training
- Defendants paid for the training over the phone to Plaintiff by giving a credit card authorization and payment to Plaintiff in Idaho
- She communicated with Julie Mazucca, a Principal of Plaintiff, between 10 and 20 times
- She communicated with Joe Mazucca, a Principal of Plaintiff, "too many" times and at least 20 times, 95% of which were by telephone
- Defendants received a Certification from Plaintiff (an Idaho Company) used by Defendants in their business
- Spaulding Decon's website states that it is certified in several states and uses contractors in every state
- Defendants' Nationwide Services includes the State of Idaho
- Spaulding Decon's website allows for online payments
- Spaulding Decon's website allows for the submission of questions and assignments by insurance companies
- Spaulding Decon's website allows for registration for a newsletter
- Spaulding Decon provides crime scene cleanup nationally

- Defendants' Facebook Page states "We are nationwide, so please use as a resource for all your biohazard, meth, hoarding needs"
- It is possible that Defendants have Facebook fans in Idaho
- The Defendants operate their business through toll free telephone and facsimile lines
- Defendants provided services as a subcontractor for Plaintiff, provided written estimates to Plaintiff in Idaho, did the work, invoiced Plaintiff in Idaho through email and/or mail, and were paid by Plaintiff by check mailed from Idaho
- Defendants "used terminology that was on [Plaintiff's] website and put it on" their website
- She has viewed the Plaintiff's website between 10 and 20 times beginning in the Fall of 2006 until May of 2010
- Defendants used the Plaintiff's website as a "research tool" to review various state laws regarding their business
- Defendants caused service of a lawsuit and Petition to Cancel Trademark upon Plaintiff in Idaho

See Deposition of Laura Spaulding at pp. 19, 20, 29, 35-37, 48, 52-55, 58-66, 81, 90, 115.

The Defendants' website has a "Follow Me on Facebook" link with connections to hundreds of "fans" of the Defendants across the USA through Defendants' Facebook Account directly linked to their website. See www.spauldingdecon.com. Yet, Defendants claim that their website is "passive" and Ms. Spaulding has "no idea" what the purpose is for Defendants' Facebook links. See Deposition of Laura Spaulding at p.31. However, according to Defendants they receive "95% of [their] business through the internet." Spaulding later admitted in her deposition that she makes updates to the Facebook Account for Defendants to "engage the fans." See Deposition of Laura Spaulding at p.35.

Defendants have engaged in an aggressive campaign directed towards Plaintiff to unfairly compete with Plaintiff. Defendants have done this through numerous communications with Plaintiff in Idaho, including phone calls, emails and faxes. Defendants have an interactive website promoting Nationwide services and the use of contractors in every State. The Court should find that personal jurisdiction exists and that venue is proper in Idaho.

## II.     PARTIES, JURISDICTION, AND VENUE

Plaintiff filed this civil action on April 12, 2010, under the Lanham Act, 15 USC §§ 1052 et. seq. and for related claims for injunctive relief, declaratory relief, damages in excess of $75,000.00 exclusive of interest, attorney fees and costs. Plaintiff is an Idaho limited liability corporation who conducts business across the United States and Canada having its headquarters and principle place of business located in Post Falls, Idaho 83854-7282.  Plaintiff's federal and common law trademark rights, trade secrets, and other confidential and proprietary business information were created, exist and are subject to protection through Plaintiff's headquarters in Post Falls, Idaho.  The violations of these rights and the harm to Plaintiff are centrally located in Idaho.

Defendant, SPAULDING DECON, LLC ("DECON"), is a Florida limited liability corporation who conducts business across the United States, including the State of Idaho, and whose principal place of business is located Land O'Lakes, Florida 34639.  Defendant, LAURA SPAULDING ("SPAULDING"), is a person who resides at Lutz, Florida 33549.  Defendant SPAULDING is within the personal jurisdiction of this Court, as SPAULDING has sufficient ties to Idaho by:  a) reaching out to the Plaintiff, b) conducting business in Idaho, as well as, c) competing with Plaintiff in violation of federal and state law.  Defendant DECON is within the personal jurisdiction of this Court, as DECON is actively conducting business throughout the United States, including Idaho and this venue.  This Court has jurisdiction over the subject matter of this action pursuant to 15 USC § 1121, 28 USC § 1331, § 1332, and § 1338 because there is diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, attorney's fees and costs.   Venue and Personal Jurisdiction are proper in this Court based upon:  a) the business between the parties, b)

Defendants' activities in Idaho, and c) communications to Plaintiff and others in Idaho by the Defendants. Defendants have also availed themselves of, and violated, the laws of Idaho.

### III. SUFFICIENT JURISDICTIONAL FACTS EXIST TO ESTABLISH PERSONAL JURISDICTION

Once a party seeks dismissal under Rule 12(b)(2), the plaintiff has the burden of demonstrating that personal jurisdiction exists. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007; *Sher v. Johnson*, 911 F.2d 1356, 1361 (9th Cir. 1990). Here, "[the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n.*, 59 F.3d 126, 128 (9th Cir. 1995). Although the plaintiff cannot "simply rest on the bare allegation of its complaint," uncontroverted allegations in the complaint must be taken as true.

A federal district court may exercise personal jurisdiction over a non-resident defendant if the defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110-11 (9th Cir. 2002) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945)). A district court "may exercise either general or specific personal jurisdiction over nonresident defendants." *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987). Specific jurisdiction exists over the Defendants. Establishing specific jurisdiction requires that: (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself or herself of the privileges of conducting activities in the forum, (2) the claim arises out of, or results from, the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). If the plaintiff meets the first and second elements, the burden shifts to the defendant to

present a compelling case that the exercise of jurisdiction would be unreasonable. S*chwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Burger King*, 471 U.S. at 476-78)).

## DEFENDANT'S DECON AND ITS OWNER LAURA SPAULDING

Defendant DECON claims to provide professional crime scene cleanup and bio hazard cleanup and be a bio hazard specialist providing nationwide service for crime scene cleanup, bio hazard decontamination, meth lab cleanup and packrat and hoarder cleanup; promoting, marketing, and advertising its services through traditional commerce channels and at the website www.spauldingdecon.com. Defendant SPAULDING contracted as an individual and on behalf of Defendant DECON to participate in a training course taught by the Plaintiff in December of 2006, regarding the proper techniques and regulations surrounding the services they tender. Defendants did not engage in the same field of services as the Plaintiff prior to attending Plaintiff's course. Defendants promoted and sold their services with the misappropriated METH LAB CLEANUP MARK and copyrighted materials taken from Plaintiff's website, competing directly and illegally with Plaintiff; and, Defendants used Plaintiff's METH LAB CLEANUP MARK as a keyword on Internet Search Engines and sponsored links from such internet search services provided by third parties (from domestic and worldwide locations).

## INTERNET SITES ESTABLISHING MINIMUM CONTACTS

Interactive Internet sites may contribute to establishing minimum contacts. *See, e.g., Millennium Enterprises, Inc. v.Millennium Music, LP*, 33 F. Supp. 2d 907, 916 -17 (D. Or. 1999) (adopting a "sliding scale" analysis to determine whether an Internet site could support personal jurisdiction). Under this sliding scale, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial

activity that an entity conducts over the Internet." *Id*. at 1124. Here, Defendants obtain 95% of their business from the Internet.

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court found personal jurisdiction was properly asserted over a defendant whose libelous actions were directed at the plaintiff resident of the forum state. The *Calder* Court looks for an established distribution channel, sales effort and advertising. *Id*. Here, Defendants' website use in connection with its other Idaho contacts are such that Defendant should reasonably anticipate being haled into court in Idaho, given the involved business relationship between the parties herein.

The Court should find that Plaintiff has established purposeful availment of this forum by the Defendant. *Tuna Processors, Inc. v. Anova Food, Inc.*, Civ. No. 07-6192-AA, 2007 WL 3232609, (D. Or., November 1, 2007) Id. at 476-77 (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1985)) (internal quotation marks omitted). The Supreme Court has stated that "where a defendant [that] purposefully has directed [its] activities at forum residents establishes jurisdiction; Defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Id.</u> at 477. These compelling cases "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." <u>Beverly Hills Fan Co.,</u> 21 F.3d at 1568.

In this case, we have both a strong Plaintiff's interest and a strong State interest in resolving this complaint; and the Court should note that the relevant long-arm statute for Idaho permits Idaho Courts to exercise personal jurisdiction over a party to the extent permitted by the United States Constitution. Thus, the personal jurisdiction inquiry reduces to a single question:

Does exercising personal jurisdiction over Defendants DECON and SPAULDING satisfy due process? This Court should find in the affirmative.

Defendants have abused the internet to the disadvantage of Plaintiff, violated Plaintiff's domain rights, Trademark, and copyrighted business secrets via multiple business channels. And, Defendants have willfully ignored Plaintiff's demand to cease and desist from using Plaintiff's business secrets, and stop the internet abuse to no avail. Defendants contend that the Court lacks specific personal jurisdiction over it because it lacks sufficient minimum contacts with Idaho. Plaintiff's response: the Plaintiff filed for Federal Trademark protection for the very reason it finds itself in this interstate controversy; and, now Plaintiff is relying on its local Federal Court system in Idaho to help it find a solution to this Trademark/Copyright/Internet Infringement case.

### IV. NINTH CIRCUIT'S THREE-PRONG TEST FOR SPECIFIC PERSONAL JURISDICTION

Under the Ninth Circuit's three-prong test, a court may exercise specific personal jurisdiction over a non-resident defendant when 1) the defendant purposefully directs its activities or consummates some transaction with the forum or a forum's resident or performs some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, 2) the plaintiff's claim arises out of or relates to the defendant's forum-related activities, and 3) the forum's exercise of personal jurisdiction comports with fair play and substantial justice (i.e., reasonableness). *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-802 (9th Cir. 2004). The Court "need only determine whether personal jurisdiction in this case would meet the requirements of due process." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977). Plaintiff

-11-

bears the burden of meeting the first two prongs of the test. *Sher*, 911 F.2d at 1361. If Plaintiff meets the first two prongs, the burden shifts to the Defendants to "present a compelling case" that the exercise of personal jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

## **PURPOSEFUL AVAILMENT AND PURPOSEFUL DIRECTION**

Plaintiff must show that Defendant either 1) purposefully availed itself of the privilege of conducting activities in the forum, or 2) purposefully directed its activities toward the forum. *Schwarzenegger*, 374 F.3d at 801-2. A court generally uses the purposeful availment analysis in contract cases, in which the court focuses on a defendant's actions in the forum that invoke the benefits and protections of the forum's laws. *Id.* at 802-3. Whereas, a court generally uses the purposeful direction analysis in tort cases, in which the court focuses on a defendant's actions outside the forum that are directed at the forum. *Id.* at 802-3. Courts often characterize violations of the Copyright Act, Lanham Act, and common law rights as torts, particularly when analyzing personal jurisdiction. *See, e.g.*, *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1098 (9th Cir. 1992). Plaintiff points to conduct by Defendants in Idaho that is susceptible to both a purposeful availment and direction analysis.

## **PURPOSEFUL AVAILMENT**

Defendants purposefully availed itself of the privilege of conducting business in Idaho by 1) entering into Idaho-based Meth Lab Cleanup LLC's Terms of Training Course Agreement, 2) billing Meth Lab in Idaho as a sub-contractor and 3) misappropriation of Plaintiff's business secrets that were established, refined, and packaged for privileged distribution under the protection of copyright and trademark law. "A showing that a defendant purposefully availed [it]self of the privilege of doing business in a forum state typically consists of evidence of the

defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. "By taking such actions, a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In determining whether purposeful availment exists, a court analyzes the nonresident party's deliberate activities within the forum in light of the nature of its contract with the forum resident. *See Burger King Corp.*, 471 U.S. at 475-76. As a result, while a party's contract with a forum resident is relevant to the jurisdictional analysis, it alone does not automatically constitute purposeful availment. *Id.* at 478. Rather, courts typically look to whether the contract creates a substantial connection with, or ongoing relationships and obligations in, the forum. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008).

### **PURPOSEFUL DIRECTION AND NINTH CIRCUIT'S "EFFECTS" TEST**

Defendants purposefully directed its activities at Idaho by 1) attending a training course that was developed in the State of Idaho, 2) used a Registered Trademark developed in Idaho, 3) posting for Defendants' own commercial gain on their website the Plaintiff's own copyrighted material, and 4) causing harm to Plaintiff in Idaho, where Plaintiff is generally known to operate from. The Ninth Circuit employs the "effects" test in purposeful direction cases. *Schwarzenegger*, 374 F.3d at 803. In order to satisfy the "effects" test, the plaintiff must make a prima facie showing that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc.*, 303 F.3d at 1111. Here, the Defendants committed numerous intentional acts aimed at an Idaho company and caused harm that it knew was likely to be

suffered in Idaho. Thus, the Court should find that Defendants purposefully directed its business activities at Idaho.

Defendants' website, accessible worldwide, provides detailed instructions on how to run and operate a meth lab cleaning operation business, that infringes upon Trademarks and copyrights owned by Plaintiff. Although that website – by itself – is insufficient to establish personal jurisdiction, *see Cybersell Inc., v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997), Defendants have admitted taking Plaintiff's copyrighted material off of the Idaho website owned and federally protected by Plaintiff.

Defendants operate an interactive Internet website where the Defendants cite services available to every U.S. state and its various law enforcement agencies and departments, which includes Idaho. This Court should conclude that Plaintiff has established the minimum contacts that are a prerequisite to the exercise of specific, personal jurisdiction over the Defendants. There is no dispute that Defendants posted on a commercial, interactive internet site copyrighted and trademarked information owned by the Plaintiff's Idaho Company to help promote business for the benefit of Defendants nationwide, including the Forum State of Idaho. Even if most of Defendants' sales are unrelated to Idaho, Defendants have intentionally availed itself of Idaho's forum. *See Tech Heads, Inc. v. Desktop Service Center, Inc.*, 105 F. Supp.2d 1142, 1151.

Defendants' highly commercial website and its record of some business with at least one Idaho resident is sufficient to find purposeful availment. The second element of the specific, personal jurisdiction test requires a plaintiff to show that the claims being asserted arise out of, or are related to, a defendant's forum-related activities. *Ziegler*, 64 F.3d at 474. But for Defendants' willingness to sell its services outside Florida and nationwide, and promote other business by reference to the Idaho company and its Trademark and copyrighted information on

the internet, Plaintiff would not have suffered harm in Idaho. Plaintiff's claims are related to this allegedly infringing conduct by the Defendants, towards the State of Idaho.

This Court should conclude, on balance, that jurisdiction is reasonable. Plaintiff has shown that 1) Defendants purposefully directed its activities or performed acts by which they purposefully availed themselves of the privilege of conducting business activities in Idaho, and 2) the claims being asserted arise out of, or are related to, Defendants' forum-related activities.

## V.  VENUE IS PROPER IN IDAHO

For purposes of adjudicating a Rule 12(b)(3) motion, this court draws all reasonable inferences in favor of the non-moving party and resolves all factual conflicts in favor of the non-moving party, the Plaintiff. *See Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir.2004). In reviewing this motion to dismiss under Rule 12(b)(3), this Court has discretion to consider facts outside of the pleadings. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Pursuant to 28 U.S.C. § 1404(a), a court has broad discretion to transfer a civil action to any other district where the action may have been brought initially, as a matter of convenience for the parties and witnesses, and to further the interests of justice. Section 1404(a) was enacted to allow "easy change of venue." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). However, to transfer this case, Defendants must first show that the transferee court is one in which the action could have been commenced originally, and show that transfer would result in greater convenience to the parties and witnesses, as well as advance the interest of justice. 28 U.S.C. § 1404(a). Here, Plaintiff has shown in the facts presented to this Court that Idaho has the greater interest than Defendants assert herein.

### EIGHT-PART VENUE CONSIDERATIONS TEST

Historically, the Ninth Circuit applies eight similar considerations that can be used in weighing whether to transfer venue. These considerations are similar, but not identical to, the factors weighed for determining the reasonableness of exercising jurisdiction: 1) plaintiff's choice of forum, 2) convenience to the parties, 3) convenience to the witnesses, 4) ease of access to evidence, 5) familiarity of each forum with the applicable law, 6) feasibility of consolidation of other claims, 7) local interest in the controversy, and 8) the relative court congestion and time of trial in each forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The court must balance the preference given to plaintiff's choice of forum with the burden of litigating in an inconvenient forum. *Id*. After examining these factors, Defendants' request in the alternative to transfer venue to Florida should be denied by this Court. These factors are analyzed as follows: 1) Plaintiffs' choice of forum is Idaho. 2) Weighing the relative convenience of the competing venues favors neither party. 3) The convenience of the likely witnesses is unlikely to strongly favor either party. Plaintiff will undoubtedly call a number of Idaho witnesses, whom Defendants will wish to question. Defendants' witness list is uncertain. 4) The ease of access to evidence does not clearly favor either venue. Plaintiff possess evidence pertaining to their alleged damages. Presumably, Defendant possesses some evidence from Idaho. 5) Idaho judges will have familiarity of the Idaho law pertaining to Plaintiff's claims regarding the common law trademark and copyright claims. 6) Concerns for claim consolidation are moot. 7) Idaho is likely to have a higher interest in the controversy presented than would Florida. 8) Finally, there is no evidence presented regarding the relative court congestion in each forum. Therefore, this Court should find that venue is proper here in Idaho, with this fair evaluation of these eight factors. Thus, Defendants' transfer attempt for improper venue should be denied (28 USC § 1406(a) and/or 28 USC § 1631).

DATED this 20th day of September, 2010.

/s/ Vincent B. Lynch
Vincent B. Lynch, Esq.
Florida Bar No.: 0917801
Lynch & Robbins P.A.
2639 Dr. MLK Jr. Street N.
St. Petersburg, FL  33704
Telephone:  (727) 822-8696
Facsimile:   (727) 471-0616
Attorneys for Plaintiff
vlynch@robbinsequitas.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 20, 2010, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send e-mail notification of such filing to the following attorney of record:

**Enrico A. Mazzoli**

**Waters Law Group, PLLC**

**714 Lyndon Lane, Suite 6**

**Louisville, KY 40222**

/s/ Vincent B. Lynch
Vincent B. Lynch, Esq.
Florida Bar No.: 0917801